BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**JENNIFER J. MARTIN, OSB #842851**
jennifer.martin@usdoj.gov
**JOHN C. BRASSELL, WASB #51639**
john.brassell@usdoj.gov
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:17-CR-00369-SI** |
| **v.** | **GOVERNMENT'S TRIAL MEMORANDUM** |
| **JOHN M. WASSON,** | |
| **Defendant.** | *Trial: November 5, 2018* |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and through Jennifer J. Martin and John C. Brassell, Assistant United States Attorneys for the District of Oregon, respectfully submits the following trial memorandum for the Court's consideration.

## I. PROCEDURAL HISTORY AND STATUS OF THE CASE

On October 4, 2017, a federal grand jury in the District of Oregon returned a single-count, felony indictment charging John M. Wasson with one count of Depredation of Government Property in excess of $1000 in *United States v. John M. Wasson,* United States District Court Case No. 3:17-cr-00369-SI. Defendant Wasson made his initial appearance on the

**Government's Trial Memorandum**

charge via summons on October 25, 2017.  Defendant placed on pretrial release, and as a special

condition of release, defendant was prohibited from returning to the Slippery Rocks Mining

Claim. Trial is set for November 5, 2018.

## II.  THE CHARGE AND ELEMENTS

Defendant is charged with one count of Depredation of Government Property in violation

of 18 U.S.C. §1361.  Count 1 of the Indictment charges that:

> Beginning on or about May 1, 2017, and continuing through October 4,
> 2017, within the District of Oregon and elsewhere, JOHN M. WASSON,
> defendant herein, willfully and by means of disturbing and damaging
> surface resources within a riparian habitat conservation area including
> the creation of impediments to fish passage, the loss of riparian area, the
> removal of native vegetation, the creation of an unauthorized access road
> and semi-permanent camp site through the compaction of surface, and
> the storage of unknown liquids leaking into the ground, did injure and
> commit a depredation against property of the United States, specifically
> land owned by the United States Forest Service, with the resulting
> damage in excess of $1,000, all in  violation of Title 18, United States
> Code, Sections 1361and 2.

In order to convict the defendant of depredation of government property in violation of

18 U.S.C. § 1361, the government must prove each of the following elements beyond a

reasonable doubt:

(1) First, defendant willfully injured or committed depredation to the specific property of

the United States or any department or agency thereof as alleged in the indictment; and

(2) Second, the damage inflicted by the defendant to the property exceeded $1,000.

In this case, the government must prove that the defendant acted willfully.  The Ninth

Circuit approved the following definition of "willfully" for a charge of depredation of

government property (18 U.S.C. § 1361) in a jury instruction used in *United States v. Derington*,

229 F.3d 1243, 1248 (9th Cir. 2000) (quoting *Bryan v. United States*, 524 U.S. 184, 189 (1998)):

"A person acts willfully if he acts intentionally and purposely and with the intent to do

something the law forbids, that is, with the bad purpose to disobey or to disregard the law.  The person need not be aware of the specific law or rule that is conduct may be violating.  But he must act with the intent to do something that the law forbids."

## III.   APPLICABLE LAW

This case involves the government's management of the national forests and a claimant's right to prospect, mine or process mineral deposits on a mining claim.

### A.     The Mining Law of 1872 (30 U.S.C. §§ 22-72)

Under the Mining Law of 1872, as long as a claimant complies with federal, state and local law, the mineral deposits are free and open to exploration.

> Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States.
> 30 U.S.C. § 22.

The Mining Law of 1872 also provides that "so long as [claimants] comply with the laws of the United States, they "shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26.

### B.     The Multiple Use Act of 1955 (30 U.S.C. § 612)

The Multiple Surface Use Act limits the use of an unpatented mining claim to uses reasonable incident to prospecting, mining or processing operations.  30 U.S.C. § 612.  It also provides that the use of an unpatented mining claim is subject to the right of the United States to manage surface resources.  30 U.S.C. § 612(b).

**C.     The Forest Service Organic Administration Act of 1897 (16 U.S.C. §551)**

Mining operations on National Forest System lands are subject to rules and regulations promulgated by the Secretary of Agriculture for the protection and preservation of the national forests. 16 U.S.C. § 551. The act recognizes "prospecting, locating, and developing the mineral resources" of the national forests as "proper and lawful" uses of National Forest System lands, but individuals engaged in those activities, "must comply with the rules and regulations covering [the] national forests."16 U.S.C. § 478.

**D.     Forest Service Regulations governing mining operations**

The relevant rules promulgated by the Secretary of Agriculture for the protection and preservation of the national forests are set forth at 36 C.F.R. part 228, subpart A, cover mining operations and uses reasonably incident thereto on National Forest System lands.  The purpose of the rules is to permit operations authorized by mining laws under 30 U.S.C. §§ 21-54 to be conducted in a manner that minimizes the adverse environmental impacts on National Forest System surface resources.  38 C.F.R. § 228.1

**1.     Notice of intent to operate and approved plan of operation**

Under these rules, an operator (a person conducting or proposing to conduct operations) proposing to conduct operations which might cause significant disturbance of surface resources must file a notice of intent to operate or Notice of Intent (NOI.)  36 C.F.R. §228.3(b), 228.4(a)(1).  The operator must submit the NOI to the District Ranger with jurisdiction over the area where the operation will be conducted.  36 C.F.R. §228.4(a).  The District Ranger will advise the operator whether a plan of operations is required within 15 days.  36 C.F.R. §228.4(a)(2).

If the District Ranger determines that any operation is causing or will likely cause significant disturbance of surface resources, the District Ranger shall notify the operator that the operator must submit a proposed plan of operations for approval and the operations cannot be conducted until a plan of operations is approved.  36 C.F.R. §228.4(a)(4).

### 2.     Examples of significant surface disturbances

Courts have found that actions similar to defendant Wasson's actions required compliance with USFS regulations.

Maintenance of personal property and structures on an unpatented mining claim has been held to be a significant surface disturbance requiring an approved operating plan.  *United States v. Brunskill*, 792 F.2d 938 (9th Cir. 1986).

Goldfield Deep Mines, mining in a national forest reserve in California, refused to file an operating plan and obtain proper authority when directed to do so by a District Ranger.  "In this case, defendants cut trees, dug roads, erected structures, moved earth and otherwise damaged forest surface land."  Goldfield Deep Mines caused significant surface disturbance.  *United States v. Goldfield Deep Mines Co. of Nevada,* 644 F.2d 1307, 1309 (9th Cir. 1981).

Clearing riparian vegetation, creating a new trail, cutting brush and other vegetation has been held to be a significant surface disturbance requiring an approved operating plan.  *United States v. Godfrey* 112 F.Supp.3d 1097 (E.D. Cal 2015).

Improperly disposed of waste water has been found to constitute significant surface disturbance requiring an approved plan of operations.  *United States v. Pepper*, 697 F.Supp 1171 (E.D. Cal. 2009)

Parke, a holder of a placer mine in the Wallowa-Whitman National Forest was discovered "processing directly into the stream, leaving test holes open, removing riparian vegetation, and

excavating sediment up to the edge of the stream." *United States v. Parke*, 2014 WL 897355 *2 (D. Or 2014). Parke's unauthorized mining activities resulted in significant surface disturbance by causing irreparable injury to the stream, including destabilization to the bank, sediment deposit and removal, and removal of riparian vegetation. *United States v. Parke*, 2014 WL 897355*6 (D. Or 2014)

      **E.**      **Depredation of Government Property (18 U.S.C. §1361)**

Although a claimant may seek authorization under a plan of operations from the United States Forest Service (USFS) to permit some limited acts or omissions that would otherwise be violations of 36 C.F.R. § 261, defendant Wasson did not seek authorization for a plan of operations. The government has no obligation to provide defendant who refuses to file an NOI or plan of operations with a notice of noncompliance with regulations prior to charging him with a criminal offense. *See, e.g. United States v. Godfrey*, 112 F.Supp.3d 1097, 1107 (E.D. Cal. 2015). Defendant Wasson's willful disposal of contaminants in the soil, creation of impediments to fish passage, loss of riparian area, removal of native vegetation, creation of a road and a semi-permanent camp site by compacting soil resulted in damage in excess of $1000 to the United States and is appropriately charged as depredation of government property.

**IV.**    **STATEMENT OF FACTS**

      **A.**      **Slippery Rocks Mining Claim**

Defendant John M. Wasson is a claimant on an unpatented mining claim known as the Slippery Rocks Mining Claim. An unpatented mining claim is a possessory interest in a particular area solely for uses reasonable incident to prospecting, mining or processing operations. 30 U.S.C. § 612(a). The Slippery Rocks Mining Claim is located on the North Fork

John Day River, a designated Wild and Scenic River containing threatened and endangered species located within the Umatilla National Forest, Grant County, District of Oregon.

Defendant Wasson mines at a very low level. He uses hand tools that can be stored in a truck bed. The Ninth Circuit Court of Appeals previously found that Wasson's persistent and continual residency on his claim was not "reasonably incident" to the limited scope of his mining activities. *United States v. Wasson*, 627 Fed.Appx. 604, 606 (9th Cir. 2015). It is not a level of mining that justifies residency, road building, dam construction or the use of chemicals damaging to the environment in this Wild and Scenic River area.

**B.      2012 – Defendant Wasson filed, then withdrew a Notice of Intent**

The United States Forest Service has attempted to work with defendant Wasson since 2012, to bring him into compliance with regulations. On March 16, 2012, defendant Wasson filed a NOI and obtained authorization from the USFS to reside at his campsite between April and October 2012. In October 2012, defendant Wasson advised the USFS District Ranger that he was not subject to their regulations under his interpretation of the General Mining Law of 1872, and he intended to live at the campsite at the Slippery Rocks mining claim.

On November 15, 2012, the United States Forest Service provided defendant Wasson with a Notice of Non Compliance for storing a second trailer on the claim and exceeding the authorized stay period ending on October 30, 2012. The Notice of Non Compliance also required defendant Wasson to set up a plan of operation with the United States Forest Service District Ranger.

On December 6, 2012, the United States Department of Agriculture sent defendant Wasson a cease and desist letter asking defendant Wasson to remove all trailers, campers, equipment, and personal items from the Slippery Rocks Mining Claim by December 16, 2012.

On December 17, 2012, Mr. Wasson withdrew his NOI for 2011, and 2012, claiming he no longer needed to comply with the regulations.

## C.     2013 - Defendant Wasson is convicted of two criminal violations at the Slippery Rocks Mining Claim

Defendant Wasson refused to dismantle his campsite after October 30, 2012. USFS employees made a number of efforts to work with him, but eventually filed misdemeanor violations against defendant Wasson for: (1) Occupying Forest System Lands without Authorization pursuant to 36 C.F.R. § 261.10(b) and Failing to Dispose of Sewage under§ 261.11(d), stemming from his conduct at the Slippery Rocks mining claim between October 30, 2012, and April 1, 2013. He was convicted after a bench trial in September 2013,[1]. The Magistrate Judge suspended the fine on the condition that defendant Wasson not reside on USFS land without authorization from the USFS.

The two convictions were affirmed by the District Court in *United States v. Wasson,* Case No. 2:13-CR-00463-BR, and by the Ninth Circuit Court of Appeals in *United States v. Wasson,* 627 Fed.Appx. 604 (9th Cir. 2015).

The Ninth Circuit rejected defendant Wasson's claim that the General Mining Law of 1872 authorized his actions, and affirmed the convictions. In discussing the conviction for occupying Forest System lands without authorization pursuant to 36 C.F.R. § 261.10(b), the Ninth Circuit cited *United State v. Backlund,* 689 F.3d 986, (2012) stating:

> Based on *Backlund,* the Forest Service was entitled to regulate Wasson's occupancy with regard to his mining claim. Further, Wasson's persistent and continual residency on his claim was not "reasonably incident" to the limited scope of his mining activities. Wasson therefore needed to obtain authorization for his residency from the Forest Service. See 36 C.F.R. § 251.50 (requiring authorization for most uses of Forest System lands); id.§ 261. 10(b) (specifically prohibiting residency on Forest System lands without the required authorization). But Wasson

---

[1] He was acquitted of two other violations.

failed to do so. The district court therefore did not err in holding that Wasson had violated 36 C.F.R. § 261.10(b).

*United States v. Wasson,* 627 Fed.Appx. 604, 606 (9th Cir. 2015).

### D.    2013 – 2015. The United States District Court grants summary judgment in favor of the defendants in a *Bivens* action brought by defendant Wasson.

On July 16, 2013, defendant Wasson filed a civil complaint against the United States and USFS employees involved in the investigation of the criminal allegations, alleging that the criminal proceedings and the subsequent impoundment of his property violated his constitutional rights. This Court adopted the Findings and Recommendation of the United States Magistrate Judge and granted summary judgment in favor of the defendants. *Wasson v. United States et al*, 2015 WL 3936382 (D. Or 2015).

### E.    2014 – 2016. Defendant Wasson is charged with additional criminal conduct and enters into a deferred prosecution agreement.

On June 19, 2014, Forest Service employees again cited defendant Wasson under 36 C.F.R. § 261.10(b) for occupying a residence without proper authorization, and for other alleged violations of federal regulations. The Court found defendant Wasson guilty of the violations, but the judgment was reversed and vacated due to a procedural error.

On March 16, 2016, defendant Wasson entered into a one year Deferred Prosecution Agreement to resolve three additional criminal violations in *United States v. Wasson,* 2:15-CR-00054-BR, and to discharge Wasson's unpaid fines imposed in *United States v. Wasson,* 2:13-CR-00463-BR. As part of the agreement, he was permitted to mine at the claim, and to store a few mining tools there. He was not permitted to reside at the mining claim.

In the Deferred Prosecution Agreement, defendant Wasson agreed that he was charged and could be tried for three criminal violations in 2:15-CR-00054-BR: (l) Interfering with a Forest Officer in the Performance of her Duties, in violation of 36 C.F.R. § 261 .3(a); (2)

Maintaining Unauthorized Structures on Forest Lands, in violation of 36 C.F.R. § 261.10(a); and (3) Occupying a Residence on Forest Lands without Authorization in violation of 36 C.F.R. § 261.10(b).

The one year Deferred Prosecution Agreement term ended March 16, 2017. The Court dismissed the offenses and discharged the fines on April 21, 2017.

**F.    2015 - 2018 The United States District Court grants summary judgment in favor of the defendants in a *Bivens* action brought by defendant Wasson.**

On July 10, 2015, defendant Wasson filed a civil complaint against the United States and USFS employees involved in the investigation of the 2014 criminal citations, alleging that the criminal proceedings violated his constitutional rights. The District Court adopted the Findings and Recommendation of the United States Magistrate Judge and granted summary judgment in favor of the defendants. *Wasson v. United States et al,* United States District Court Case No. 2:15-cv-01279-SU (D. Or 2015) (ECF 86). Defendant Wasson filed an appeal, which is now pending in Ninth Circuit Court of Appeals Case No. 18-35489.

**G.    Defendant escalates his criminal conduct in 2017**

**1.    April 19, 2017, site visit to Slippery Rocks mining claim.**

On April 19, 2017, a USFS Minerals Administrator conducted a site visit at the Slippery Rocks mining claim. He saw a tent set up in an area of the Slippery Rocks mining claim that defendant Wasson had not previously used as a campsite. The campsite was not adjacent to the Forest Service Road, thereby creating additional impact on the surface resources. He saw the expired mining claim notice posted on a tree, and as well as a notice reading "Closed Circuit Television and Audio Monitoring on Premises."

### 2.    July 17, 2017, site visit to Slippery Rocks mining claim.

On July 17, 2017, the same USFS Minerals Administrator visited the Slippery Rocks mining claim.  He noticed that the new campsite was located within the Riparian Habitat Conservation Area, which was of concern for the USFS.  He saw the site included two tents, a camper, his truck and a pop-up outhouse, all within 30 feet of the North Fork of the John Day River.

He saw that defendant Wasson built a semi-permanent foundation under one of the large tents using treated lumber, sand and gravel.  The USFS Minerals Administrator observed a new compacted road devoid of native vegetation, grass and shrubbery leading from the Forest Service road into the campsite.

During the visit, defendant Wasson told him that he had been staying on his mining claim since April and that he intended to stay for the remainder of the season into fall.  Defendant Wasson said that he planned to leave his camper at the campsite over the winter.  Defendant Wasson told the USFS Minerals Administrator that he had a surveillance system and that he intended to put in Hughes net satellite at the campsite.

The USFS Minerals Administrator tried to work with defendant Wasson to bring his actions into compliance with regulations.  He informed defendant Wasson that he should have submitted a Notice of Intent for his mining activities because of the effect on the surface resources.  He told defendant Wasson that he was in noncompliance with regulations.  Defendant Wasson disagreed, saying he was covered under the 1872 mining laws and that the 36 C.F.R. 228 regulations did not say anything about occupancy.  The USFS Minerals Administrator could not recall the precise occupancy regulation and told Wasson he would look into it.

Defendant Wasson told the USFS Minerals Administrator that he chose not to submit a NOI because the (National Environmental Policy Act (NEPA) was too complicated and time consuming.

### 3.    July 21, 2017, site visit to Slippery Rocks mining claim.

On July 21, 2017, the USFS Minerals Administrator, a USFS District Ranger and a USFS Area Geologist conducted another site visit.  Defendant Wasson was not present while they were there.  USFS Minerals Administrator saw that defendant Wasson had added more material to create a path across the river, and that he had a wing dam lined with plastic sheeting to hold water.  These constructions restricted the natural flow of the water in the river.  He could see that the plastic lining was catching and holding juvenile steelhead fish, preventing them from accessing the flowing portion of the river.

The USFS Minerals Administrator was concerned that material and sediment from defendant's mining was discharging directly into the North Fork of the John Day River.  Because this type of discharge affects the fish listed in the Endangered Species Act for the North Fork of the John Day River, defendant Wasson is required to consult with the USFS about how and whether the mining material and sediment can be discharged in this manner.

The USFS Area Geologist observed a number of surface resource disturbances during this visit, including the dirt road created to enhance vehicular access to the campsite, a lack of proper sanitation, improper posting of signs on National Forest System and the construction of a semi-permanent campsite.  He observed that the wing dam was improperly altering an Endangered Species Act (ESA) listed stream channel in the North Fork of the John Day River. He observed that the anchoring cordage across the North Fork of the John Day River was a

hazard.  He also noted that defendant Wasson's actions created an impediment to fish passage.

His activities were improperly altering sediment important to endangered species.

**4.      August 2, 2017, site visit to Slippery Rocks mining claim.**

On August 2, 2017, the USFS Minerals Administrator visited the site with a USFS

Hydrologist and a USFS Endangered Species Act (ESA) Consultation Biologist.  They observed

additional surface resource damage resulting from defendant Wasson's actions.

The USFS Hydrologist observed and documented the loss of riparian area and the

compaction of surface resources due to defendant's actions.  He also documented evidence of in-

stream processing, causing sediment and water quality issues.

The USFS ESA Consultation Biologist observed and documented how defendant

Wasson's construction of the wing dam lined with plastic degraded the fish habitat in the North

Fork of the John Day.  She documented how defendant Wasson's excavation of a large hole

affected the riverbed and negatively affecting fish.

Defendant Wasson was present during the August 2, 2017, site visit.  The USFS Minerals

Administrator reminded defendant Wasson of the regulations limiting him to a 14-day camping

period in the absence of other authorization.  Defendant Wasson replied that he was exempt from

the 14-day camping limit from due to the 1872 mining laws.  The USFS Mineral Administrator

attempted to explain the laws and regulations to defendant Wasson.  Defendant Wasson

disagreed and argued with him.

The USFS Minerals Administrator told defendant Wasson that the in-stream work and

construction of wing dams had significant impact on Endangered Species Act species, and that

defendant Wasson needed to consult with the USFS about this issue.  Defendant Wasson

disagreed, contending he did not need to do so, because he was not using motorized equipment, and the material he was discharging came from the stream.

During the August 2, 2017, site visit, the USFS Minerals Administrator also spoke with defendant Wasson about his new campsite. Defendant Wasson said there had been no campsite or road at the location before he set up camp in April of 2017. Defendant Wasson created the unauthorized road by driving on the path repeatedly until there was a road. Defendant Wasson admitted that he was living full-time at the campsite.

### 5. August 31, 2017, site visit to Slippery Rocks mining claim.

On August 31, 2017, the USFS Minerals Administrator visited the Slippery Rocks mining claim with a USFS Archeologist. Defendant Wasson was not present during this site visit. The USFS Minerals Administrator saw and documented further degradation of the river bed and banks from defendant's constructed wing dam. The USFS Archeologist documented one artifact next to the unauthorized road defendant Wasson constructed, and three other artifacts in the area.

At the campsite, the USFS Minerals Administrator noted that defendant Wasson brought in two 55 gallon drums, one apparently full, and one apparently empty with unknown contents. He also documented two jugs of brown liquids, some empty boxes of fry oil. He also saw containers with unidentified liquids that appeared to be leaking into the soil.

### H. Target letter

The government sent defendant Wasson and his defense counsel a target letter in late September 2017, inviting defendant Wasson to appear before the grand jury on October 3, 2017, and advising him that the grand jury was looking at his involvement in possible violations of federal criminal laws involving, but not necessarily limited to, destruction of government

property in violation of 18 U.S.C. § 1361.  Defense counsel for defendant Wasson advised the government that he would not appear before the grand jury.

## I.      Indictment

On October 3, 2017, the federal grand jury returned an indictment charging defendant with one count of depredation of government property in violation of 18 U.S.C. § 1361.

## J.      Post indictment search warrant executed at the Slippery Rocks campsite.

On October 12, 2017, federal law enforcement officers executed a search warrant at the Slippery Rocks Mining Claim and campsite.  They seized evidence of defendant Wasson's willful damage to government property, including attempting to manufacture biodiesel at the campsite.  A Hazardous Material team removed approximately 90 gallons of oil.  The Hazardous Material team also removed contaminated soil where defendant Wasson dumped byproducts of the biodiesel process.  The area of removed, contaminated soil was approximately six feet long and one foot deep.  The soil was tested and found to contain materials that are not found in clean soil.

The federal law enforcement officers observed that areas of the compacted access road and the campsite had gravel added in places to make driving and walking easier for defendant Wasson.  Two buckets with rocks and gravel were located in the tent site.

The search warrant team removed more than 20 feet of black plastic that defendant Wasson used to line a rock wing dam he constructed in the river, affecting juvenile salmonid passage.  They found and seized containers of herbicide, pesticide and rodenticide, as well as rodent traps at the campsite.  They found and seized a security camera system as well as a chopped up USFS picnic table piled with cut logs stacked outside the trailer.

Law enforcement officers did not seize mining equipment. Defendant Wasson was notified through his counsel that he needed to remove his property from the campsite by a specific date. He did so.

### K. Subsequent site visits in November 2017, and March 2018, showed a need for additional remediation

In November 2017, the USFS Minerals Administrator returned to the campsite, and noted that the camp and associated equipment were removed. He observed that the wing dam and crossing were dismantled. He noted that among other actions, the USFS needed to dismantle the fire ring and prevent individuals from using the road to return the campsite to its former state.

The USFS Minerals Administrator returned to the campsite in March 2018, and noted that the boulders the USFS had placed across the road in November of 2017, to prevent the road from being used had been moved. He observed six fire rings. He observed that vegetation was returning, but that it was not clear whether it would return to its former state without soil decompaction and seeding.

### L. Damages from defendant's conduct

The United States Forest Service incurred well over $1,000 in damages from defendant Wasson's actions. The United States Forest Service paid several thousand dollars for the removal of hazardous waste, and has engaged in some remediation efforts. The government will seek restitution for the damages.

## V. EVIDENTIARY ISSUES

### A. Stipulations

The parties have agreed that a friend of the defendant would provide specific statements if called as a witness. The government has filed the stipulated testimony in a separate pleading. The parties agreed that defendant Wasson preserved his right to object as to the relevance of the

statements.  The government requests that the stipulations deemed relevant be read by the case agent from the witness stand.

If the parties enter into to any additional factual or evidentiary stipulations, the government requests the Court read the stipulations at the beginning of the case in order to focus the jury's attention to the elements at issue.  At the conclusion of the case, the government requests that the Court include Model Instruction 2.4 along with any stipulations of fact.

The government hopes to enter into foundational stipulations for most, if not all exhibits, to expedite the trial.  The parties will advise the Court of any stipulations at or before the status conference.

**B.      Notice of other acts testimony that offered alternatively as evidence inextricably intertwined with the evidence in this case, or under Fed. R. Evid. 404(b).**

The government hereby gives notice that it intends to introduce other acts evidence at trial.  The government believes that the defendant Wasson's prior contact with the USFS since 2011, constitutes evidence that is "inextricably intertwined" with a charged offense.  As such it is independently admissible and is exempt from the requirements of Rule 404(b).  *United States v. Dorsey,* 677 F.3d 944, 951 (9th Cir.2012); accord Fed. R. Evid. 404(b) advisory committee's notes (stating that Rule 404(b)'s requirements do "not extend to evidence of acts which are 'intrinsic' to the charged offense").

The government submits that this evidence is inextricably intertwined with the offense and is not subject to the requirements of Rule 404(b).  However, should the court find that that the evidence is not inextricably intertwined, the evidence is admissible under Fed. R. Evid. 404(b).

Evidence is admissible under Rule 404(b) if "(1) the evidence tends to prove a material point;" (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008) (internal quotation marks and citations omitted). If the evidence satisfies Rule 404(b) the court must then determine whether its probative value "is substantially outweighed by the prejudicial impact under Rule 403." Id. (Internal quotation marks and citation omitted).

Rule 404(b) "is a rule of inclusion – not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). Once it has been established that the evidence offered serves a permissible purpose, "the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence[.]" *Id*. (internal citation omitted). Because Rule 403, by definition, results in the exclusion of relevant and otherwise admissible evidence, it should be used sparingly. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence may be excluded under FRE 403 only if its probative value is substantially outweighed by one or more of the articulated dangers or considerations;" Rule 403 "favors admissibility").

Specifically, the government intends to introduce the following evidence that defendant knew his use of an unpatented mining claim on public land is limited to activities that are reasonably incident to prospecting, mining and processing operations, and such uses are subject to the right of the United States to manage surface resources.

### 1.    2012 – Defendant Wasson filed, then withdrew a Notice of Intent

The government plans to offer the evidence that defendant Wasson filed, then withdrew a Notice of Intent, as discussed above in the statement of facts. The government plans to introduce a video of a discussion between defendant Wasson and the former District Ranger in December 2012, in which the District Ranger explains why defendant Wasson needs to comply with the regulations. The government seeks to offer the defendants' actions and statements to show defendant's knowledge, plan, motive, knowledge, intent, lack of mistake or accident that his unlawful conduct in his case was willful.

### 2.    2013 - Defendant Wasson is convicted of two criminal violations at the Slippery Rocks Mining Claim

The government plans to offer the evidence discussed above in the statement of facts. The government seeks to offer the convictions to show defendant's knowledge, preparation, plan, motive, knowledge, intent, or lack of mistake or accident that his unlawful conduct in his case was willful.

The government plans to offer the Ninth Circuit Court of Appeals opinion advising defendant Wasson that the Forest Service was entitled to regulate Wasson's occupancy with regard to his mining claim. The Court advised him that his persistent and continual residency on his claim was not "reasonably incident" to the limited scope of his mining activities. The Ninth Circuit Court of Appeals advised defendant Wasson that he needed to obtain authorization for his residency from the United States Forest Service. Defendant did not further appeal his convictions.

The government seeks to offer the Ninth Circuit opinion to show defendant's knowledge, preparation, plan, motive, knowledge, intent, or lack of mistake or accident that his unlawful conduct in his case was willful.

### 3. Defendant Wasson is charged with additional criminal conduct and enters into a deferred prosecution agreement.

The government plans to offer the evidence of the deferred prosecution agreement discussed above in the statement of facts. In addition, the government will offer a letter from the District Ranger to defendant Wasson dated September 16, 2014, advising defendant Wasson to comply with Forest Service regulations. The government seeks to offer the evidence of the conduct underlying the three violations, and defendant's deferred prosecution agreement to show defendant's knowledge, preparation, plan, motive, knowledge, intent, or lack of mistake or accident that his conduct in his case was willful. The evidence is also relevant to show that defendant has the ability to conform his conduct to the laws in this case, and that he chose not to do so after the Deferred Prosecution Agreement was completed.

### C. Expert Testimony

The United States will call Senior Analysis Shawn Smith to testify about her analysis of the contaminated soil removed from the campsite. Her reports and notes have been provided in discovery. Ms. Smith will testify that the contaminated soil sample she tested exceeded the acceptable limits for o-Terphenyl. o-Terphenyl is a substance listed as a chemical hazard by the National Institute for Occupational Safety and Health. It is not a substance found naturally in clean soil.

Her testimony will assist the jury in understanding the results of the contaminated soil testing and the cost the USFS incurred in digging up the contaminated soil and removing it as hazardous waste. The cost for doing so was over $1,000. Additional information about her testimony is provided in the Notice of Expert Witness filed separately.

### D.    Continuing Discovery Obligations.

The government is aware of its continuing obligation to provide discovery.  As the parties prepare for trial, and new discovery emerges, the government has provided, and will continue to provide, discovery to counsel.  The government anticipates providing *Jencks* material one week before trial.

Federal Rule of Criminal Procedure 16 requires defendant to provide reciprocal discovery to the government.  Fed. R. Crim. P. 16(b)(1)(A)(i).  The government requested reciprocal discovery in each transmittal letter sent with discovery in this case.  The government also filed a formal request for Rule 16 discovery on October 18, 2018, after a discussion with defense counsel.  To date, no reciprocal discovery has been disclosed.

Additionally, Rule 16(b)(l)(A)(ii) requires defendant to disclose items he intends to use in his "case-in-chief."  Though there is a lack of case law defining what constitutes a defendant's "case-in-chief," defendant should not be permitted to circumvent its disclosure obligation by presenting exhibits during the cross-examination of witnesses or by characterizing an exhibit as being offered for impeachment when it addresses the substance of the charges.  As noted in the Advisory Committee's Notes to the 1974 Amendments to Rule 16(b), "[t]he majority of the Advisory Committee is of the view that the two—prosecution and defense discovery—are related and that the giving of a broader right of discovery to the defense is dependent upon giving also a broader right of discovery to the prosecution."  A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense."  Black's Law Dictionary 207 (7th ed. 1999).  In *United States v. Young*, the court affirmed the exclusion of a recorded conversation between the defendant and a government witness, offered by the defendant without prior disclosure to the government, because the evidence, though offered

during cross-examination, was meant to support the defendant's case-in-chief. 248 F.3d 260, 268 (4th Cir. 2001). In so ruling, the *Young* court correctly recognized that the key question is more how the evidence is used, as opposed to when it is first introduced, to be in line with the spirit of the reciprocal disclosure obligation. *Young*, 248 F.3d at 268.

## VI.   CONCLUSION

The United States Forest Service tried repeatedly to work with defendant Wasson to permit him to exercise his right to mine the Slippery Rocks mining claim while staying in compliance with regulations designed to protect and preserve forest resources. Defendant Wasson has refused to work with the USFS employees, and his noncompliant conduct has escalated over the years. He knows he is required to obtain authorization to engage in activities that damage surface resources, or that are not incidental to mining activities. He adamantly refuses to do so, despite repeated admonitions from the Court and from the United States Forest Service.

In 2017, defendant Wasson deliberately altered the course of the river, constructed a road, built a semi-permanent foundation for a walled tent and he brought in large quantities of liquids that leached into the soil. He knew his conduct was damaging property of the United States. Once again he refused to work with USFS employees to bring his actions into compliance with the law. He acted willfully in damaging property belonging to the government and should be held accountable.

DATED October 22, 2018.                    Respectfully submitted,

                                           BILLY J. WILLIAMS
                                           United States Attorney

                                           */s/ Jennifer J. Martin*
                                           JENNIFER J. MARTIN, OSB #842851
                                           JOHN C. BRASSELL, WASB #51639
                                           Assistant United States Attorneys

**Government's Trial Memorandum**                                    **Page 22**