**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>    Plaintiff,<br><br>vs.<br><br>**JOHN WASSON,**<br><br>    Defendant. | Case No.: 3:17-CR-00369-SI<br><br>**DEFENDANT'S TRIAL MEMORANDUM** |

Mr. Wasson is a 73 year old Vietnam war veteran who has been trying to live out the twilight of his life as a small scale gold miner. He has butted heads repeatedly with the federal government based on his beliefs about what he is permitted to do as a gold miner. The government has grown frustrated with the fact that they have failed to force their point of view upon Mr. Wasson by using citations and threatening letters, and therefore decided to get creative in order to come up with a felony crime to accuse him of.

The government chose to charge Mr. Wasson with a crime that was never intended to regulate environmental crimes. 18 U.S.C. § 1361 is a traditional property crime, requiring the

Page 1 – DEFENDANT'S TRIAL MEMORANDUM

government to prove actual damage to property that it actually owns. *See United States v. Beneke*, 449 F.2d 1259, 1262 (8th Cir. 1971). Therefore, the government's case should properly focus on exactly what property the government owns, how exactly it was damaged, and what the reduced value of the property is as a result of the damage.

With his pretrial filings, defendant seeks to resolve the most significant question of ownership that the charges raise: whether the government owns any property between the ordinary high water marks of the river. It does not, and no evidence concerning what happened between those two marks should come before the jury. The questions to be resolved by the jury are whether Mr. Wasson's conduct was authorized by law, and, if it was not, whether he nevertheless had a good faith belief that it was.

**Interplay Between Criminal Statute and Mining Laws**

Mr. Wasson maintains that his actions were authorized by the mining laws and the United States Forest Service ("USFS") regulations related to mining on USFS land.[1] When miners enter onto USFS land to conduct mining activities, their actions are regulated by 36 C.F.R. § 228. The regulations of part 228 contemplate three tiers of mining operations depending on their level of impact to the surface resources owned and managed by the USFS. *See* 36 C.F.R. § 228.4. The three tiers are 1) those that require a formal "plan of operations" approved by the USFS; 2) those that require the miner to send a "notice of intent" detailing the mining operation to the USFS; and 3) those that require neither. *Id*. The regulations list six different types of operations that fit into the third category—expressly exempted from the requirement to submit a notice of intent.

> (i) Operations which will be limited to the use of vehicles on existing public roads or roads used and maintained for National Forest System purposes;

---

[1] All of Mr. Wasson's actual mining occurred on state land, but the regulations still apply to him, as he needed to access his claim over USFS land and roads. *See* 36 C.F.R. § 228.3(a); *United States v. McClure*, 364 F.Supp.2d 1183, 1185 n.5 (E.D. Cal. 2005).

>  (ii) Prospecting and sampling which will not cause significant surface resource disturbance and will not involve removal of more than a reasonable amount of mineral deposit for analysis and study which generally might include searching for and occasionally removing small mineral samples or specimens, gold panning, metal detecting, non-motorized hand sluicing, using battery operated dry washers, and collecting of mineral specimens using hand tools;
>
>  (iii) Marking and monumenting a mining claim;
>
>  (iv) Underground operations which will not cause significant surface resource disturbance;
>
>  (v) Operations, which in their totality, will not cause surface resource disturbance which is substantially different than that caused by other users of the National Forest System who are not required to obtain a Forest Service special use authorization, contract, or other written authorization;
>
>  (vi) Operations which will not involve the use of mechanized earthmoving equipment, such as bulldozers or backhoes, or the cutting of trees, unless those operations otherwise might cause a significant disturbance of surface resources;

36 C.F.R. § 228.4(a)(1). Of the six, Mr. Wasson's operation fits within three: subcategories ii, v, and vi. Of particular significance, the various types of operations for which no formal approval or notice of intent is required are listed in the disjunctive with the word "or," meaning that if an operation fits within any of the categories, the operator can proceed without any further requirements. Therefore, because Mr. Wasson's operation fit within three of the listed categories, he was not required to submit either a notice of intent or plan of operations, and his operation was lawful.

The government is likely to argue that his full time occupancy of the site, and the manner in which he disposed of his waste violated certain prohibitions found in 36 C.F.R. part 261. That argument ignores the fact that the scope of part 261 specifically exempts mining activities from the prohibitions. "Nothing in this part shall preclude activities as authorized by the Wilderness Act of 1964 or the U.S. Mining Laws Act of 1872 as amended." 36 C.F.R. § 261.1. Therefore,

the question of whether Mr. Wasson's use of USFS land was lawful boils down to whether he complied with the relevant statutes. The relevant question is therefore whether his use of USFS land was "reasonably incident" to his lawful mining operation. 30 U.S.C. § 612(a); *United States v. Backlund*, 689 F.3d 986, 995 (2012).

In *Backlund*, the USFS determined that the two defendants' residency on their mining claims were not reasonably incident to the operations and therefore sent them letters of non-compliance. 689 F.3d at 990. Those letters triggered the availability of administrative review of the agency's determination. Mr. Backlund availed himself of administrative review while the other defendant, Mr. Everist, did not. *Id*. at 999. Therefore, when it came to the question of whether the defendants were permitted at trial to challenge the agency's determination, Mr. Backlund could while Mr. Everist could not. *Id*. at 1001. In Mr. Wasson's case, the USFS chose not to engage in any action that would have triggered Mr. Wasson's right to administrative review.[2] The USFS decision to move straight to criminal enforcement means that Mr. Wasson had no obligation to exhaust administrative procedures---he cannot exhaust procedures that are not available to him.

In the overall context of this criminal case, the effect is simple: if the jury determines that Mr. Wasson's activities on USFS land were reasonably incident to his mining operation, then his actions were entirely lawful and the jury should return a verdict of not guilty. This is true irrespective of whether the operation depredated the land in excess of $1000. Furthermore, because this is a criminal case where the government does not have a prior agency determination

---

[2] Mr. Wasson acknowledges that there are prior cases dealing with his occupancy on mining claims. *See, e.g., United States v. Wasson*, 627 Fed. Appx. 604 (2015). However, those cases dealt with operations under a notice of intent at different locations and different times. They have no preclusive effect on his rights here.

Page 4 – DEFENDANT'S TRIAL MEMORANDUM

to rely upon, the burden should be on the government to prove beyond a reasonable doubt that Mr. Wasson's activities that they complain of were not reasonably incident to his lawful mining operation.

Alternatively, if the government claims that Mr. Wasson was required to submit either a notice of intent or a plan of operations, then it should be required to prove that none of the categories listed in 36 C.F.R. § 228.4(a)(1) apply to his operation. Mr. Wasson would then be entitled to challenge that evidence by presenting evidence of his own. In particular, evidence to support the proposition that his mining operation "in [its] totality, [did] not cause surface resource disturbance which is substantially different than that caused by other users of the National Forest System who are not required to obtain a Forest Service special use authorization, contract, or other written authorization." 36 C.F.R. § 228.4(a)(1)(v). That evidence will include evidence of the extent of resource disturbance caused by other users in the vicinity of Mr. Wasson's claim.

**Good Faith Defense**

Even if this Court or the jury ultimately determines that Mr. Wasson's conduct was not, in fact, lawful, the jury still must determine whether Mr. Wasson was operating under a good faith belief that his conduct was lawful. That is because the government must prove that his conduct was willful, and good faith is an absolute defense to willfulness. While good faith is a concept most often applied to tax evasion cases, its use is not limited to those cases, and it makes sense to apply it to this case, as the complexity of the mining regulations are at least as complicated as the tax laws. *See Cheek v. United States*, 498 U.S. 192, 200 (1991) (recognizing that the "proliferation of statutes and regulations has made it difficult for the average citizen to know and comprehend the extent of duties and obligations imposed by the tax laws"). This

Page 5 – DEFENDANT'S TRIAL MEMORANDUM

concept was recognized by the Tenth Circuit in *United States v. McPhilomy*, 270 F.3d 1302 (10th Cir. 2001), where the court approved of a good faith instruction in a depredation prosecution involving resource extraction, and in this Court in *United States v. Bundy et. al.,* Case No. 3:16-cr-00051-BR, Dkt. No. 2015, at 24-25 (Final Jury Intructions). Given the nature of Mr. Wasson's defense as outlined above, good faith is plainly applicable and the instruction ought to be given.

In 1991, the Supreme Court ruled that a good faith belief defense does not need to be objectively reasonable when negating willfulness in tax cases. *Cheek*, 498 US at 200.  *Cheek* involved a defendant who failed to pay IRS taxes.  The court ruled that if, "Cheek asserted that he truly believed that the Internal Revenue Code did not purport to treat wages as income, and the jury believed him, the Government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief." *Id.* at 202. The reasoning that the US Supreme Court used to permit good faith jury instructions has been expanded well beyond tax law to a variety of other areas of the law that involve complexity, including at least one 10th Circuit case involving depredation of government property.

In *McPhilomy*, the court analyzed whether a good faith instruction used in a depredation of government property case was adequate. The government prosecuted a father and son for theft of government property in violation of 18 U.S.C. §§ 2 and 64, and depredation of government property in violation of 18 U.S.C. § 1361. The defendants put forth a good faith defense that they believed they were permitted to mine at the location. They previously hired a lawyer to determine what rights they had to remove materials from a community pit on BLM land. The attorney advised them to stake a mining claim which would entitle them to valuable materials and to obtain a permit to remove and purchase materials from the pit. The attorney advised them this would protect them from theft charges. They met with the BLM who would not give them a

permit due to unsettled trespass violations in the pit. Two months later they again tried to get a permit which the BLM again denied to them. Finally, they returned with another individual who requested a permit to remove 25 tons of stone from the pit and received one permitting their removal of 5 tons, which the defendants paid for. Soon after they filed a notice of location with the BLM asserting they had located a deposit of valuable minerals but were told they needed to advise the field office before starting operations. The defendants filed a notice of intent to commence mining operations which the BLM found inadequate and sent back to them to complete. The BLM received the form again two weeks later which again it found inadequate. Meanwhile, defendants began mining operation and were then charged with theft of government property and depredation of government property. The trial court allowed a good faith defense, which the Tenth Circuit upheld.

The Eighth Circuit has approved the use of a good faith instruction in fraud cases. In *United States v. Casperson,* 773 F.2d 216 (8th Cir 1985), defendants were charged with defrauding investors by making representations about their loans and loan guarantees that they knew to be untrue with an intent to deceive or with reckless indifference to their truth. The defendants requested a good faith instruction identical to one approved in *United States v. Ammons*, 464 F.2d 414, 417 (8th Cir 1972). The instruction explains that good faith constitutes a complete defense to charges requiring fraudulent intent. The trial judge refused to give it, attempted to devise its own one, and ultimately chose not to give a good faith instruction.

On appeal, the defendants argued that the trial court's refusal to give the instruction, coupled with an additional failure to instruct on the specific issue of good faith, effectively removed their theory of defense from the purview of the jury. The court ruled in favor of the defendant because good faith constitutes a complete defense to such specific intent crimes, citing

*United States v. Sherer*, 653 F.2d 334, 337 (8th Cir 1981). There, the Eighth Circuit held that defendants are entitled to an instruction on good faith where one has been requested and there is evidence to support the theory. *Id.* at 337.

The court noted that the instruction had previously been approved by the court and was an acceptable statement of the applicable law. At trial all three defendants offered evidence in support of the good faith claim—indeed, their entire defense was that the alleged false statements and representations were made with a genuine belief that they were true. Thus the court ruled they were entitled for the jury to be specifically instructed on their good faith theory, and so reversed the conviction. *Casperson,* 773 F.2d at 224.

Mr. Wasson intends to present a good faith defense and asks the Court to give the instruction provided in his proposed jury instructions.

**DATED** this 22nd day of October, 2018

By: /s Jesse Merrithew
**Jesse Merrithew**, OSB No. 074564
Attorney for Defendant