**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **JOHN WASSON,** <br><br> Defendant. | Case No.: 3:17-CR-00369-SI <br><br> **DEFENDANT'S MEMORANDUM OF LAW ON OWNERSHIP OF THE NORTH FORK JOHN DAY RIVER** |

As it impacts several aspects of the trial, Mr. Wasson is separately submitting this memorandum on the issue of ownership of the section of the North Fork John Day River that his mining operation was on.

**History of state ownership of waterways and tests to determine navigability**

In 1842, the Supreme Court first addressed state ownership of waterways. The Court held that the people of the original 13 states received the absolute right to the "navigable" waterways within their borders for their own common use, subject only to the rights surrendered by the Constitution to the federal government. *Martin v. Waddell*, 41 U.S. 367, 410 (1842). Three years later, the Court extended the *Martin* holding to all the states when the State of Alabama was admitted into the Union. *Pollard's Lessee v. Hagan*, 44 U.S. 212, 230 (1845). The Court ruled that all new states have the same "rights, sovereignty, and jurisdiction over, the shores of navigable waters, and the soils under them," as well as the navigable waters themselves resting within their borders. *Id.* at 239-30. These early cases remain good law. *Montana v. United States*, 450 U.S. 544, 551-52 (1981).

Initially, sovereign ownership of "navigable" waterways was limited to waters influenced by the ebb and flow of the tide. However, in 1869 the Supreme Court rejected the common law understanding of navigable waters to include other waters that were unaffected by tides. The Court held that, "title to lands bordering on navigable streams should stop at the stream and all such streams should deemed to be, and remain public property." *Railroad Company v. Schurmeir*, 74 U.S. 272, 285-89 (1869).

In 1877, the Court confirmed state ownership of non-tidal waters in a dispute over rights of a riparian land owner and a city. The Court ruled that the "proprietorship of the beds and shores" of certain non-tidal waters, "belongs to the States by their inherent sovereignty," declaring that the, "public authorities ought to have entire control of the great passageways of commerce and navigation, to be exercised for the public advantage and convenience." *Id.* at 338. The doctrine was affirmed in 1892 when the Court stated:

> It is the settled law of this county that the ownership of and dominion and `sovereignty over lands covered by tide waters, within the limits of the several states, belong to the respective States within which they are found….subject always to the paramount right of Congress to control their navigation so far as may be necessary for the regulation of commerce with foreign nations and among the States…. The same doctrine to be held applicable to fresh waters as well as waters moved by the tide.

*Pollard's Lessee*, 44 U.S. at 230.

Oregon acquired statehood in the 1859 Admission Act and title to all waterways or portions of waterways that were tidally influenced or that were non-tidal but that satisfied the federal test of title navigability.

**Title Navigability Test**

The *Daniel Ball* test of title-navigability was established in a series of cases the Court decided between 1922 and 1935. At the time of statehood, title to the beds of rivers passed to the State if the rivers were then navigable, if they were not, then title to the river beds remained with the United States. The extent of state ownership was determined by the *Daniel Ball* test based upon the specific facts of each case. Under the test, a rivers width, depth and flow are analyzed and the extent to which permanent natural features of the waterways would preclude their use for commerce absent unusual circumstances. *The Daniel Ball*, 77 U.S. at 563.

In 1982, the Ninth Circuit held that mile 0 to 37 of Oregon's McKenzie River was title-navigable. *Oregon v. Riverfront Protection Association*, 672 F.2d 792 (1982).The Court determined its potential use for commerce because there was evidence of transporting logs on the river. *Id*. at 794-5. The court stated that, "use of the river need not be without difficulty, extensive, or long and continuous." *Id*. at 795. The court further held that the seasonal nature of the log drives did not destroy its navigability. *Id*. In 1989, the Ninth Circuit ruled that a river in Alaska that was only normally a foot and a half deep, and often lower was navigable because a

recreation industry of 400 people that offered guided fishing and sightseeing river trips in inflatable rafts. *Alaska v. Ahtna, Inc.,* 891 F.2d 1401, 1405 (9th Cir. 1989). Because the river showed susceptibility for commercial use at statehood the court ruled for the state. *Id*.

In sum, the state has title in all navigable rivers and their river beds and there is an expansive view of what constitutes a navigable river within a state.

Recent Oregon cases detailing requirements to determine "navigability" are similarly inclined to find in favor of the state. In *Northwest Steelheaders Assoc., Inc v. Simantel*, 112 P.3d 383 (Or. App. 2005), the court determined that two short stretches of the John Day River are navigable. The plaintiff filed an action seeking a declaration of navigability and state ownership of the bed and banks of certain segments of the river. The Court of Appeals used the *Daniel Ball* test to determine navigability of the specified sections of the John Day River in 2005. *Northwest Steelheaders Assoc.*, at 388-395. Reports were provided by four experts; an ethnohistorian who testified about historical uses and capacities for navigation of the John Day River – based on historical, anthropologic, and archeological evidence; a natural resources professor who testified about recreational use and flow requirements for watercraft on the John Day River; a professor of civil engineering who testified about hydrologic characteristics of the John Day watershed; and a historical scholar who testified by the history of navigation and transportation on the John Day area which the court found both, "credible and helpful." Additionally, lay witnesses who use the river provided testimony. *Id.* at 391-392.

The court analyzed (1) susceptibility to navigation from a historical perspective, noting that at the time of statehood the river flow was considerably higher; (2) actual use on the river at the time of statehood, noting that Native American tribes used dug-out canoes for fishing travel and trade and that similar boats continue to traverse the length of the John Day River with little

difficulty; and (3) post–statehood actual use that corroborated the river's susceptibility to navigation in 1859 including evidence of a pleasure boat that plied a ten mile stretch of the John Day in the 1880's and 1890's and a pleasure cruiser that operated a different area of the river in 1900. There was at least one log drive in the 1920's and a company secured a franchise from the State of Oregon to transport timber down the John Day River to the river's mouth. *Id.* The court held that the segments of the John Day River at issue were susceptible to both travel and trade at that time and thus that the State of Oregon held, and holds, title to that land. *Id.* at 395.

**Conclusion**

At present, the particular stretch of river Mr. Wasson was mining on has not had a navigability study conducted on it. However, given the favorable nature of the legal test, and the detailed findings of the Oregon Court of Appeals in *Northwest Steelheaders* on a different stretch of the same river, it is likely if not certain that the navigability determination would be made in favor of state ownership. Therefore, the land between the ordinary high water marks is not federal land and Mr. Wasson cannot be prosecuted for any damage done to that land.

    **DATED** this 22nd day of October, 2018

    By:   /s Jesse Merrithew
    **Jesse Merrithew**, OSB No. 074564
    Attorney for Defendant